# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CB AVIATION, LLC, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO. 10-1411 |
| | : | |
| HAWKER BEECHCRAFT CORP., | : | |
| Defendant. | : | |

DuBOIS, J.                                                                                                    August 12, 2010

# **M E M O R A N D U M**

## I.     INTRODUCTION

This is a breach of contract action arising out of the sale of an allegedly defective aircraft by defendant Hawker Beechcraft Corp. ("Hawker Beechcraft") to plaintiff CB Aviation, LLC ("CB Aviation"). The Court's Scheduling Order of June 4, 2010, directed the parties to file and serve memoranda of law addressing their respective positions on: (1) the issues to be tried to a jury and the issues to be tried to the Court sitting without a jury, and (2) all choice of law issues in the case. After reviewing those memoranda and the relevant material submitted by the parties, the Court concludes that the case should be tried to a jury, and that Pennsylvania law is applicable to defendant's affirmative defense of release, the only choice of law issue on which the parties disagree.

## II.    BACKGROUND

In October 2007, plaintiff, a Pennsylvania limited liability company, entered into a "Resale Aircraft Purchase Agreement" and an "Addendum to Resale Aircraft Purchase Agreement" (together, the "Agreement") with defendant, a Kansas corporation, to purchase a

-1-

Raytheon Aircraft Company Model Beech 390 aircraft ("Aircraft"). (Compl. ¶¶ 1, 3-4.) The Agreement states that it is governed by the laws of the State of Kansas, including the Uniform Commercial Code as adopted in Kansas. (Compl. ¶ 23.) Under the Agreement, defendant agreed and represented that at the time of sale "the Aircraft will be in an airworthy condition." (Compl. ¶ 6.) The Aircraft was sold to plaintiff "with a fresh 1600-hour airframe inspection pursuant to the Agreement." (Compl. ¶ 9.) Plaintiff took delivery of the Aircraft on February 22, 2008. (Compl. ¶ 13.)

On or about March 2, 2008, the Aircraft's baggage door "departed" the Aircraft while in flight. (Settlement Agreement and Release, Ex. B to Pl.'s Mem. of Law.) Plaintiff notified defendant of the incident, and after executing a Settlement and Release Agreement ("Release"), defendant repaired the damage caused by the baggage door separation, at no cost to plaintiff. (Release ¶ 1; Def.'s Mem. of Law at 6; Pl.'s Mem. of Law at 4, 8.) In one of several prefatory clauses, the Release states as follows: "WHEREAS, the parties desire to resolve any claims associated with the baggage door departure on mutually acceptable terms." Paragraph Four of the Release provides:

> In consideration of [defendant] bearing the cost of the repairs to [the Aircraft] . . . [plaintiff] herein release[s] and discharge[s] [defendant] . . . from any and all claims, demands and causes of action they have or claim to have against [defendant] arising out of or relating to the baggage door separation incident or the purchase of the Aircraft. This Release includes, but is not limited to, any claims for loss of use, diminution in value, the right to rescind or revoke the purchase of [the Aircraft], and any other damages or remedies available to [plaintiff].

(Release ¶ 4.)

Sometime in or around September 2009, at approximately 1800 total hours, the Aircraft underwent a regular 200-hour inspection. (Compl. ¶ 14.) The 1800-hour inspection revealed

that the Aircraft contained a "structural" manufacturing defect that rendered the Aircraft non-airworthy. (Compl. ¶¶ 15, 18.) Thereafter, the Aircraft was repaired to "remedy this structural defect and place the aircraft in a purported airworthy state." (Compl. ¶ 19.) The structural defect and necessary repairs were disclosed, as required, to the Federal Aviation Administration. (Compl. ¶ 20.) This disclosure has substantially impaired the resale value of the Aircraft. (Compl. ¶ 21.) Since discovering the structural defect, plaintiff has not flown the Aircraft, and has notified defendant of its intent to "rescind the agreement, reject the Aircraft, and/or revoke its acceptance thereof." (Compl. ¶ 22.)

Plaintiff filed a Complaint in the Court of Common Pleas of Philadelphia County on March 24, 2010, containing four counts: (1) rescission, (2) breach of contract, (3) breach of express warranty, and (4) breach of express warranty. Defendant filed a Notice of Removal in this Court on March 30, 2010, averring federal jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332. Defendant filed an Answer to plaintiff's Complaint on April 16, 2010, raising, *inter alia*, the affirmative defense of release. (Answer ¶ 2.) Defendant also filed a Demand for Trial by Jury on April 19, 2010.

## III. DISCUSSION

### A. Jury Trial or Bench Trial

Plaintiff contends that the case "should be resolved by a bench trial because it will permit the Court to apply the applicable legal principles to a factual record that will not be significantly disputed." (Pl.'s Mem. of Law at 2.) Defendant filed a timely jury demand pursuant to Federal

Rule of Civil Procedure 38(b), and objects to a non-jury trial.[1]  As Rule 38(a) states, "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution — or as provided by a federal statute — is preserved to the parties inviolate."  Fed. R. Civ. P. 38(a).  Having properly preserved its right by filing a timely demand, defendant is entitled to a jury trial; that it may be more "efficient" to litigate the case before the Court, as plaintiff argues (Pl.'s Mem. of Law at 3), is of no legal consequence.

### B. Choice of Law

Plaintiff and defendant agree that the "contract pertaining to the sale of the Aircraft is, by its terms, governed by Kansas law."  (Pl.'s Mem. of Law at 1-2; Def.'s Mem. of Law at 2.)  Thus, the Court will apply Kansas law — and in particular, the Uniform Commercial Code as adopted in Kansas — in interpreting the Agreement, and the parties' rights in relation thereto.

With respect to defendant's affirmative defense of release, the parties disagree over whether Kansas or Pennsylvania law should apply.  Both plaintiff and defendant argue that a true conflict exists between Pennsylvania and Kansas law with respect to the interpretation of releases.  However, plaintiff argues that Pennsylvania law should apply to the Release in this case, while defendant contends that Kansas law should govern.

#### 1. Principles Governing Choice of Law Analysis in Pennsylvania

Federal courts exercising diversity jurisdiction must apply the conflict of law rules of the

---

[1] Federal Rule of Civil Procedure 38(b) provides: "On any issue triable of right by a jury, a party may demand a jury trial by . . . serving the other parties with a written demand — which may be included in a pleading — no later than 14 days after the last pleading directed to the issue is served."  Fed. R. Civ. P. 38(b).  Defendant filed a Demand for Trial by Jury on April 19, 2010, three days after filing its Answer.  Defendant has therefore filed a timely jury demand pursuant to Rule 38(b).

forum state. On Air Entm't Corp. v. Nat'l Indem. Co., 210 F.3d 146, 149 (3d Cir. 2000) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)).  Therefore, Pennsylvania choice of law rules apply to this case.

Pennsylvania applies "interest/contacts" methodology to choice of law questions.  See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226-27 (3d Cir. 2007).  This is a "flexible choice of law rule which weighs the interests [its] sister-states may have in the transaction."  Powers v. Lycoming Engines, 328 F. App'x 121, 124 (3d Cir. 2009) (quoting Commonwealth v. Eichinger, 915 A.2d 1122, 1133 (Pa. 2007)).  Pennsylvania's choice of law analysis requires the Court to conduct a two-part inquiry:  "The first level of scrutiny considers whether 'an actual or real conflict [exists] between the potentially applicable laws.'"  Powers, 328 F. App'x at 125 (quoting Hammersmith, 480 F.3d at 230) (brackets added in Powers).  "If there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as [ ] 'true' [or] 'false' . . . ."  Hammersmith, 480 F.3d at 230.

Whether a conflict is true or false depends on each jurisdiction's interest in having its law applied.  If "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law," then the conflict is a false one and "the court must apply the law of the state whose interests would be harmed if its law were not applied."  Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 (3d Cir. 1991).  If both jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law, then a "true" conflict exists. Hammersmith, 480 F.3d at 230 (citing Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)).  In this situation, a deeper level of analysis is necessary.  "[T]he Court must then determine which state has the 'greater interest in the application of its law.'"  Hammersmith, 480 F.3d at 231

(quoting Cipolla, 267 A.2d at 856).  To determine the significance of a state's interest, courts assess the "contacts each state has with the accident, the contacts being relevant only if they relate to the 'policies and interests underlying the particular issue before the court.'" Cipolla, 267 A.2d at 856 (quoting Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964)).

On the other hand, a court may conclude that there is no conflict at all between the laws of two jurisdictions.  The lack of any conflict is to be distinguished from the "false conflict" scenario described above.  See Hammersmith, 480 F.3d at 230 ("We think it is incorrect to use the term 'false conflict' to describe the situation where the laws of two states do not differ.  If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary.")  "Under Pennsylvania's choice of law rules . . . if no conflict exists, [a court] may apply Pennsylvania law." Scirex Corp. v. Federal Ins. Co., 313 F.3d 841, 847 n.1 (3d Cir. 2002) (citing Keystone Aerial Surveys, Inc. v. Pennsylvania Property & Cas. Ins. Guar. Ass'n, 777 A.2d 84, 94 (Pa. Super. Ct. 2001)).

Choice of law analysis is issue specific.  This means that in some cases, different states' laws may apply to different issues in a single case, a principle known as "depecage." Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006).  Although no Pennsylvania court has explicitly addressed the doctrine of depecage, the Third Circuit has predicted that the courts of Pennsylvania would apply it in appropriate cases.  See Taylor v. Mooney Aircraft Corp., 265 F. App'x 87, 91 (3d Cir. 2008) (citing Griffith, 203 A.2d at 805).

### 2. Conflict of Law Regarding the Affirmative Defense of Release

Notwithstanding the parties' arguments to the contrary, the Court concludes that the laws of Pennsylvania and Kansas governing the interpretation of releases present no conflict at all.  In

both jurisdictions, releases of liability are strictly construed. See Bowersox Truck Sales and Serv., Inc. v. Harco Nat'l Ins. Co., 209 F.3d 273, 280 (3d Cir. 2000) ("Releases are strictly construed 'so as to avoid the ever present possibility that the releasor may be overreaching.'") (citing Restifo v. McDonald, 230 A.2d 199, 201 (Pa. 1967)); Larson v. Safeguard Properties, Inc., 379 F. Supp. 2d 1149, 1157 (D. Kan. 2005) ("[T]here is ample law in Kansas that . . . supports a strict construction of releases and contracts restricting liability.") A release is enforceable according to its terms, absent fraud, duress, or mutual mistake. See Bowersox, 209 F.3d at 279; McMillin v. Farmers & Bankers Life Ins. Co., 206 P.2d 1061, 1065 (Kan. 1949).

In construing releases under either law, the Court should seek to effectuate the intent of the parties — such intent is to be determined primarily based upon the language of the release itself. See Bowersox, 209 F.3d at 279 ("The general rule for construction of releases is that the intention of the parties must govern, but this intention must be gathered from the language of the release.") (quoting Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 892 (3d Cir. 1975)); Speiss v. Meyers, 483 F. Supp. 2d 1082, 1091 (D. Kan. 2007) ("[W]here a settlement agreement is unambiguous, the Court's inquiry into the parties' intent is limited to the four corners of the agreement.") (citing Boos v. Nat' Fed'n of State High Sch. Ass'ns, 889 P.2d 797, 803 (Kan. Ct. App. 1995)). Moreover, releases are interpreted to cover only claims which were within the contemplation of the parties when the release was given. See Bowersox, 209 F.3d at 279 (citing Restifo, 230 A.2d at 201); Central Kansas Credit Union v. Mutual Guar. Corp., 886 F. Supp. 1529, 1538 (D. Kan. 1995) ("A valid settlement agreement is final and conclusive as between the parties on . . . those 'issues the parties intended to settle.'") (quoting In re Estate of Engels, 692 P.2d 400, 404 (Kan. Ct. App. 1984)).

"Thus, general words of a release will not usually be construed to bar a claim which had not accrued at the date of the execution of the release, nor a claim, the existence of which was not known to the party giving the release." See Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 896 (3d Cir. 1975) (internal citations omitted); Central Kansas Credit Union, 886 F. Supp. at 1538 (settlement agreement bars "pre-existing claims directly tied to the settled dispute") (quoting Engels, 692 P.2d at 404). However, where the parties manifest an express intent to settle all accounts, "the release will be given full effect even as to unknown claims." See Three Rivers Motors Co., 522 F.2d at 896.

As demonstrated by the above comparison, there is no substantive difference between the laws of Pennsylvania and Kansas regarding the construction of releases. The Court therefore concludes that there is no conflict of law to resolve. Accordingly, the Court will apply Pennsylvania law in analyzing defendant's affirmative defense of release.

## IV.     CONCLUSION

Having properly preserved its right by filing a timely demand, defendant is entitled to a jury trial in this case. Based on the agreement of the parties, the Court will apply Kansas law in interpreting the contract relating to the sale of the Aircraft. Applying the doctrine of depecage, the Court concludes, for the foregoing reasons, that the law of Pennsylvania will be applied to defendant's affirmative defense of release.

**BY THE COURT:**

**/s/ Jan E. DuBois**
**JAN E. DUBOIS, J.**