IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| CB AVIATION, LLC, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| HAWKER BEECHCRAFT CORP., | : | NO. 2:10-cv-1411-JD |
|     Defendant. | : | |

_____

**DuBOIS, J.**                                                                                       November 8, 2011

**M E M O R A N D U M**

## I.   INTRODUCTION

This case arises out of the sale of an airplane by defendant to plaintiff pursuant to a sale agreement executed in October 2007. After the sale, plaintiff discovered that the airplane had a structural defect and filed suit claiming breach of contract, breach of express and implied warranties, and rescission based on mutual mistake of fact.

Presently before the Court is the Motion of Hawker Beechcraft Corporation to Preclude the Valuation Testimony of Plaintiff's Expert, Dennis Blackburn ("Daubert Motion"). Plaintiffs seek to call Mr. Blackburn as an expert in aircraft appraisal to testify as to the value of the aircraft at issue in the case. Defendant asks the Court to bar this testimony because, defendant argues, Mr. Blackburn is not qualified as an expert in this field and the methodology he used to arrive at his conclusion is not reliable. For the reasons that follow, the Court denies defendant's motion.

## II.   BACKGROUND

In October 2007, plaintiff and defendant entered into an agreement by which defendant sold plaintiff a Raytheon Aircraft Company Model Beech 390 (Premier I) aircraft (the

"Aircraft"). During a routine inspection at defendant's maintenance facility in September 2009, defendant discovered cuts in the center pillar of the Aircraft's windshield. Defendant repaired the cuts, but plaintiff refused to accept the return of the Aircraft, claiming that defendant had breached the sales contract by delivering to plaintiff a non-airworthy airplane. Defendant refused to refund the purchase price, and plaintiff sued.

Plaintiff retained Dennis Blackburn of Corporate Concepts International, Inc., to prepare a report in accordance with Federal Rule of Civil Procedure 26(a)(2). As requested, Mr. Blackburn prepared a report dated November 22, 2010. Plaintiff seeks to call Mr. Blackburn as an expert witness with regard to the value of the damaged Aircraft. Defendant deposed Mr. Blackburn on August 24, 2011. Defendant now attacks Mr. Blackburn's qualifications and the methodology he used to reach his conclusion regarding the Aircraft's value.

### III.   DISCUSSION

#### A.   Federal Rule of Evidence 702 – Legal Standard

Defendants challenge Mr. Blackburn's testimony on the ground that it does not meet the standard for admissibility of expert testimony set forth in Federal Rule of Evidence 702, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The "pathmarking" Supreme Court cases interpreting Rule 702 are Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993),[1] and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). United States v. Mitchell, 365 F.3d 215, 234 (3d Cir. 2004) (Becker, J.). In Daubert, the Supreme Court held that "[f]aced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592. In Kumho Tire, the Supreme Court made clear that the Daubert gatekeeping function extends beyond scientific testimony to testimony based on "technical" and "other specialized" knowledge. 526 U.S. at 141.

Daubert requires courts to address a "trilogy of restrictions"—qualifications, reliability, and fit—before admitting expert testimony. Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003); see also Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). The party offering the expert testimony must prove each of these requirements by a preponderance of the evidence. In re TMI Litig., 193 F.3d 613, 663 (3d Cir. 1999). Defendant challenges only the first two: qualification and reliability.

**B.    Qualifications**

To qualify as an expert, "Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony." Betterbox Comm'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 335 (3d Cir. 2002) (quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998)). The Third Circuit has instructed courts to interpret the qualification requirement "liberally" and not to insist on a

---

[1] In 2000, Rule 702 was amended to incorporate the holding in Daubert. See United States v. Brownlee, 454 F.3d 131, 142 n.10 (3d Cir. 2006).

3

certain degree or background when evaluating the qualifications of an expert. See Waldorf, 142 F.3d at 625. "The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education,' qualify an expert as such." In re Paoli R.R. Yard PCB Litig. (Paoli I), 916 F.2d 829, 855 (3d Cir. 1990) (quoting Fed. R. Evid. 702). Moreover, "[t]his liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Id. (quoting Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)).

Defendant argues that Mr. Blackburn is not qualified because he has never been involved in a completed sale of a Premier I aircraft. Defendant further argues that Mr. Blackburn has insufficient experience appraising damaged aircraft. The Court rejects these arguments.

Mr. Blackburn is the President of Corporate Concepts International, Inc. ("CCI"), which has provided consulting services in aircraft acquisition, aircraft sales, expert witness engagement, aircraft appraisal, and air carrier and corporate aviation for over twenty-five years. (Curriculum Vitae of Dennis Blackburn ("Blackburn CV"), CB Aviation, LLC.'s Resp. Opp'n Def.'s Mot. Precl. Valuation Test. Pl.'s Expert, Dennis Blackburn, Ex. B, at 1.) CCI's clients include aircraft leasing and financing companies as well as wealthy individuals and large corporations. (Id.) Mr. Blackburn conducts seminars on aircraft valuation, appraisals, and market values. (Id.) He also has testified regarding aircraft valuation in depositions and at trials in Connecticut, Kansas,

Georgia, Maryland, Texas, Minnesota, Nevada, and New York. (Id.; CB Aviation, LLC.'s Resp. Opp'n Def.'s Mot. Precl. Valuation Testimony Pl.'s Expert, Dennis Blackburn ("Pl.'s Resp."), Ex. C.)

Mr. Blackburn has previously appraised various models of Premier aircraft. (Dep. of Dennis Blackburn ("Blackburn Dep."), Pl.'s Resp., Ex. D, at 20–21.) Further, on approximately four occasions, he appraised damaged aircraft with constructions similar to that of the Premier I Aircraft at issue in this case. (Blackburn Dep. 58–60.)

Defendant argues first that Mr. Blackburn is not qualified because "in the field of determining diminution of a damaged aircraft, Mr. Blackburn is an amateur, not an expert." (Mem. Law Supp. Mot. Hawker Beechcraft Corp. Precl. Valuation Test. Pl.'s Expert, Dennis Blackburn ("Def.'s Mem. Law") 4.) In support of this, defendant cites Storie v. Duckett Ctr., Inc., No. 06-CV-1238-DDN, 2007 WL 4454297, at *8 (E.D. Mo., Dec. 14, 2007), which held that an expert with experience in estimating the repair costs for damaged vehicles was not qualified to testify about the value of such vehicles.

The Court rejects this argument. First, defendant incorrectly characterizes Mr. Blackburn's experience appraising damaged aircraft. Mr. Blackburn has appraised aircraft with structural damage more than once. (Blackburn Dep. 58–60.) Further, those damaged aircraft had "composite fuselages" similar to that of the aircraft at issue. (Id.) Second, defendant conceives of "qualification" too narrowly. Mr. Blackburn is qualified because he has been appraising aircraft of many types for many clients for over thirty years. (Blackburn CV 1–2.) Mr. Blackburn's qualification stems from this vast experience generally, rather than his experience specifically

with damaged aircraft. See Holbrook, 80 F.3d at 782 ("[I]t is an abuse of discretion to exclude testimony simply because . . . the proposed expert does not have the specialization that the court considers most appropriate."); Smolow v. Hafer, 513 F. Supp. 2d 418, 426 (E.D. Pa. 2007) (DuBois, J.) (concluding that an accountant was qualified to testify regarding accounting practices at a government agency despite accountant's lack of experience working with government agencies).

Defendant also argues that Mr. Blackburn is not qualified because he has never worked with a client who actually completed the sale or purchase of a Premier aircraft. (Def.'s Mem. Law 4.) However, Mr. Blackburn is familiar with the Premier line of aircraft, having followed it since before the first Premier I was sold. (Blackburn Dep. 32–41.) That he did not see a sale through to its completion is irrelevant to his qualifications. Further, Rule 702 does not require that the expert be familiar with the precise type of property at issue when giving valuation testimony. Messana v. Mercedes Benz of N. Am., 2001 U.S. Dist. LEXIS 17785, at *4–5 (N.D. Ill. Oct. 31, 2001) (allowing valuation testimony despite expert's lack of experience with the type of automobile at issue).

Thus, the Court concludes that Mr. Blackburn is qualified to render expert testimony on the value of the Aircraft.

### C. Reliability

Daubert's reliability requirement "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." In re Paoli R.R. Yard

PCB Litig. (Paoli II ), 35 F.3d 717, 742 (3d Cir. 1994) (quoting Daubert, 509 U.S. at 590). In Kumho Tire, the Supreme Court held that the Daubert test of reliability is "flexible" and that "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." 526 U.S. at 141–42. In determining whether the reliability requirement is met, courts examine the following factors:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Mitchell, 365 F.3d at 235 (citing Paoli II, 35 F.3d at 742 n.8). These factors are neither exhaustive nor applicable in every case. Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806–07 (3d Cir. 1997).

Under the Daubert reliability prong, parties "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." Paoli II, 35 F.3d at 744. "The evidentiary requirement of reliability is lower than the merits standard of correctness." Id. "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." Mitchell, 365 F.3d at 244 (quoting Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)).

Mr. Blackburn's valuation determination proceeded in two steps. First, he determined the fair market value of an undamaged Premier I aircraft at various points in time: when new (2002), at the time of the sale at issue (October 2007), and at the time he issued his report (November 2010). Second, he determined that the damage to the center pillar decreased the fair market value of the Aircraft at any given point in time by between thirty-eight and forty-one percent. Defendant challenges the reliability of both of these steps.

### 1. Fair Market Value of an Undamaged Premier I Aircraft

Defendant first argues that Mr. Blackburn's determination of the original sale price of the Aircraft and his determination of the fair market value of an undamaged Premier I aircraft in November 2010 were unreliable. The Court rejects these arguments.

#### a. Original Sale Price

Mr. Blackburn estimated the original sale price of the Aircraft as new in 2002 as $5,150,000. (Valuation Report ("Valuation Report"), Pl.'s Resp., Ex. A, at 8.) To do so, Mr. Blackburn relied on a pre-litigation conversation he had with a representative of Hawker Beechcraft Corp., the manufacturer of the Aircraft, as well as published price data. (Def.'s Mem. Law 6; Blackburn Dep. 72–74.) Defendant claims this is unreliable hearsay evidence.

"Rule 703 permits experts to rely on hearsay so long as that hearsay is of the kind normally employed by experts in the field." In re TMI Litig., 193 F.3d at 697; see also In re Sulfuric Acid Antitrust Litig., 235 F.R.D. 646, 656 (N.D. Ill. 2006) (noting that interviews, even if not highly focused and systematic, "can be a reliable source of data upon which to base expert opinion"). Mr. Blackburn relied in part on a conversation he had with the manufacturer of the

Aircraft pursuant to a request from another client unrelated and prior to the events giving rise to the instant suit. In doing so, Mr. Blackburn was following his usual procedure as an expert who was asked to estimate the price of a new Premier I aircraft. (See Blackburn Dep. 75.) Moreover, Mr. Blackburn verified the price with published Vref[1] and Blue Book[2] data in opining that a 2002 Beechcraft Premier I, the same model as the Aircraft, "likely sold new" for $5,150,000. (Valuation Report 8.)

### b. Fair Market Value of the Aircraft in 2010

To determine the fair market value of an undamaged Premier I aircraft at the time the report was issued, Mr. Blackburn relied on AMSTAT[3] and Vref publications containing valuation data. Based on these publications, Mr. Blackburn opined that the "best case retail value" of an undamaged Premier I aircraft on November 22, 2010, the date of Mr. Blackburn's report, was between $2,200,000 and $2,400,000. (Valuation Report 8.) Defendant argues that employing these publications is unreliable for two reasons: First, flooding destroyed the data in Mr. Blackburn's home. Second, the data are listing or asking prices, not actual sales prices.

Defendant cites no authority for the proposition that expert testimony is inadmissible if the data upon which the testimony is based are not available at the time of trial. To the contrary, at least one court in this District has admitted expert testimony where the underlying data was no

---

[1] Vref is a published reference guide for aircraft values. Vref Publishing, http://www.vrefpub.com.
[2] The Aircraft Bluebook is a published reference guide for aircraft values. Aircraft Bluebook, http://www.aircraftbluebook.com/HomePage.jsp/
[3] "AMSTAT performs business aircraft market research and presents detailed information on the worldwide fleet of corporate, business and private jets, turbo-props and turbine helicopters." AMSTAT, Company Summary, http://www.amstatcorp.com/AboutUs/CompanySummary.

longer available. See, Merisant Co. v. McNeil Nutritionals, LLC, 242 F.R.D. 315, 324 (E.D. Pa. 2007). Moreover, defendant does not argue that the destruction of the data was in bad faith or anything other than accidental. While defendant can cross-examine Mr. Blackburn at trial about the destroyed data, the fact that it is no longer available does not render the expert testimony inadmissible.

Defendant is correct that Mr. Blackburn admitted in his deposition that the data tracks the "average asking price," rather than the sale price. (Blackburn Dep. 98.) Mr. Blackburn acknowledged as much when he stated in the Valuation Report that the valuation calculations were based on the "best case retail value," not the actual fair market value. (Valuation Report 8.) Defendant does not challenge the Blackburn testimony on the ground that the data used were not the best data available, and there is no evidence to the contrary. Thus, the Court concludes that the Blackburn testimony on the asking or listing price is not unreliable. In so ruling, the Court leaves open the question of the valuation of the Aircraft in the calculation of plaintiff's damages, an issue not briefed by the parties with the possible exception of the market value adjustments for the damaged aircraft discussed below.

### 2.     Market Value Adjustments for the Damaged Aircraft

Mr. Blackburn projected that the damage to the Aircraft decreases its value by between thirty-eight and forty-one percent.[4] (Valuation Report 9.)  That diminution in value includes a

---

[4]    According to Mr. Blackburn, this thirty-eight to forty-one percent discount would apply at any point in time.  (Compare Valuation Report 9 (using the thirty-eight percent and forty-one percent numbers to calculate the discount at the time of sale), with Blackburn Dep. 100 (using same numbers to calculate discount at the time of deposition).) Thus, using Mr. Blackburn's figures, when defendant sold plaintiff the Aircraft in October 2007 for $4,294,250—an amount

twenty-five percent discount due to the damage and a discount of between thirteen and sixteen percent between retail and wholesale prices. (Id.) Defendant claims that these calculations "lack any 'indicia of methodology or calculations.'" (Def.'s Mem. Law 7 (quoting Long v. Monaco Coach Corp., No. 3:04-CV-203, 2007 WL 4613000, at *5 (E.D. Tenn., Sept. 27, 2007)).)

Defendant's argument fails for a number of reasons. First, it focuses on only one of the Mitchell factors—whether the methodology consists of a testable hypothesis—ignoring another relevant factor: the expert's experience. Unlike more rigid scientific testimony, valuation testimony relies heavily on the expert's knowledge and experience. See Simon v. Weissman, 301 F. App'x 107, 116 (3d Cir. 2008) (holding that valuation testimony need not be based on a method that could be "repeated or used on a day-to-day basis"); Greenberg v. Paul Revere Life Ins. Co., 91 F. App'x 539, 540–41 (9th Cir. 2004) (affirming district court's decision to admit valuation testimony because it was "the 'kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it'" (quoting United States v. Hankey, 203 F.3d 1160, 1169 (9th Cir. 2000))). Mr. Blackburn has been appraising aircraft for over thirty years. (Blackburn CV 1–2.) His estimate of the difference between retail and wholesale prices for aircraft generally, as well as the discount applied to aircraft with structural damage, is based on extensive experience and is thus reliable.

---

Mr. Blackburn believed to be a good estimate of the fair market value of an undamaged Premier I aircraft at the time—the value of the damaged Aircraft would have been between $2,533,607 (a forty-one percent discount) and $2,662,435 (a thirty-eight percent discount). Further, the value of the Aircraft on November 22, 2010—the day Mr. Blackburn issued his report and estimated the current "best case retail value" as being between $2,200,000 and $2,400,000—would have been between $1,298,000 (a forty-one percent discount on $2,200,000) and $1,488,000 (a thirty-eight percent discount on $2,400,000).

11

Further, Mr. Blackburn did utilize on a reliable methodology, at least with regard to the amount of the discount based on the damage to the Aircraft. Mr. Blackburn divided the pool of potential aircraft purchasers into three segments: (1) those that would not consider purchasing an aircraft with any significant damage history (about 60% of all potential purchasers), (2) those who might inquire more about the aircraft but would ultimately decide not to purchase it based on the damage (about 30%), and (3) those who would consider purchasing the aircraft, but only at a deep discount (about 10%). (Valuation Report 7–8.) Mr. Blackburn arrived at these estimates through a careful analysis of the damage and repair: the damage is structural and could result in "explosive or rapid decompression," and the repairs were made with "filler," which deteriorates with age and requires extensive maintenance and upkeep. (Id. at 8.) This analysis is sufficient to render the expert opinion reliable. See Simon, 301 F. App'x at 116 (finding that valuation testimony could be duplicated despite the "inherent variability" of such testimony).[5]

## IV.  CONCLUSION

With respect to expert opinion testimony, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595. Considering this precept, and having determined that Mr. Blackburn's testimony satisfies the

---

[5] Mr. Blackburn conducted a telephone survey of current and former clients whereby he provided the broad details of the aircraft and the damage and asked whether they would consider purchasing it. (Survey Emails, Pl.'s Resp., Ex. F.) The results of this survey generally matched Mr. Blackburn's predictions as to the three categories of potential purchasers. (Id.)

Defendant argues that the Court should "disregard[ ]" the survey when determining the reliability of Mr. Blackburn's testimony because it was served on defendant too late and because it is based on hearsay and conjecture. The Court need not address that argument because its ruling on the motion is not based on the survey.

standard announced in Daubert, the Court denies defendant's Daubert motion. The Court will permit Mr. Blackburn to testify as to the value of the Aircraft. The Court's ruling is without prejudice to the right of defendant to raise specific objections to Mr. Blackburn's testimony at trial.